# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JERE T. QUINN, SR. | CIVIL ACTION NO. 3:13-CV-00550-JWD-SCR |
| VERSUS | JUDGE JOHN W. deGRAVELLES |
| CAPITAL TRANSPORTATION CORP., D/B/A CAPITAL AREA TRANSIT SYSTEM | MAG. JUDGE STEPHEN C. RIEDLINGER |
| | JURY TRIAL |

## RULING AND ORDER

This matter is before the Court on a Motion for Summary Judgment [R. Doc. 18] filed by Defendant, Capital Transportation Corp., d/b/a Capital Area Transit System ("CATS"). Plaintiff Jere T. Quinn, Sr., opposes the Motion. Oral argument is not necessary. The Court has jurisdiction based on 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

Considering the briefs and the law, the Motion for Summary Judgment is **DENIED**. Quinn has made a prima facie case of discrimination. Further, construing the facts most favorably to Quinn, a reasonable jury could conclude that the stated reasons for termination were a pretext for racial discrimination. Finally, summary judgment is inappropriate given the numerous issues of material fact left to be resolved.

## I.     Factual Background

Plaintiff Jere T. Quinn, Sr. is a white male. (Affidavit of Jere T. Quinn, Sr., p. 2, R. Doc. 19-9, p. 2). He was hired by CATS in June 2012. (Quinn Affidavit, p. 1, R. Doc. 19-9, p. 1). His initial title was Director of Training and Bus Service Management. (Deposition of Jere T. Quinn, Sr., p. 54, R. Doc. 18-1, p. 5). As will be discussed below, there is some dispute between the parties as to what his duties encompassed.

1

At some point during Quinn's time at CATS, Brian Marshall, the CEO, left CATS. (Quinn Depo., p.64, R. Doc. 19-3, p. 4). The parties seem to agree that, following Marshall's departure, CATS gave Dalton Honore and Gary Owens interim co-administrative authority over CATS. (See, e.g., Affidavit of Gary Owens, p. 1-2, R. Doc. 18-1, p. 93-94; Plaintiff's Statement of Material Facts in Dispute, ¶ (N)).

Quinn was terminated on June 11, 2013. (Quinn Affidavit, p. 1-2, R. Doc. 19-9, p. 1-2). Prior to the termination, Quinn was reprimanded, though there is a dispute as to whether he received the reprimand. (Affidavit of Todd Mance, p. 2, R. Doc. 18-1, p. 86; Quinn Depo, p. 110-115, R. Doc 19-3, p. 42-47). As will be discussed below, there is also a dispute as to who had the authority to terminate Quinn and who was involved in the termination.

CATS offered a number of reasons for the termination. These include:

Failure to be obtain [sic] the knowledge necessary to complete job in its entirety, Failure to be accountable for staff in Training Department, Failure to provide requested SOP documents for Training in specific job duties, Failure to report accidents/incidents to the system per the Bus System Rule Book and CBA with Local 1546, [and] Failure to use the company vehicle to assist the system.

(Mance Affidavit, Exhibit B, R. Doc. 18-1, p. 90). CATS also claims Quinn regularly came into work late and left early, became disruptive after he was not hired for the interim CEO position, made false statements to trainees, and became insubordinate to Mance. (Mance Affidavit, p. 3, R. Doc. 18-1, p. 87).

Quinn, however, has submitted evidence that he performed well in his job and that his termination was racially motivated. This evidence will be discussed more fully below.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little,* 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the

evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

B.  Analysis

1.  **The *McDonnell Douglas* Framework**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer … to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). If there is no direct evidence of discrimination, then Title VII claims based on circumstantial evidence are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804, 93 S.Ct. 1817 (1973). *Id.*

Under the *McDonnell Douglas* framework, a plaintiff must first establish a "prima facie" case of racial discrimination. If a plaintiff does so, an inference of intentional discrimination is raised. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)(citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir.1996)). "[T]he employer must [then] rebut [the] presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner*, 476 F.3d at 345. "If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias." *Lee*, 574 F.3d at 259. "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be

sufficient to survive summary judgment." *Turner*, 476 F.3d at 345 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-1095 (1981)).

## 2. Quinn has established a *prima facie* case of discrimination.

"Although the precise elements of [a prima facie] showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)(citations omitted). The Fifth Circuit has explained that, "[t]o establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee*, 574 F.3d at 259 (citations omitted). The fourth element can also be satisfied by showing that the plaintiff "was 'replaced' when his former job duties were absorbed by" members outside the protected class. *Howard v. United Parcel Service, Inc.*, 447 Fed. App. 626, 2011 WL 5138719, at *3 (5th Cir. 2011)

Here, CATS puts the first and fourth elements at issue. CATS claims that Quinn was not a member of a protected class and that a white plaintiff must show "background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority." (Defendant's Memorandum in Support, R. Doc. 18-3, p. 15, citing, e.g., *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983)).

Title VII prohibits discrimination in employment on the basis of race, and a Caucasian can be a member of a protected group. *E.g. Young v. City of Houston, Tex.,* 906 F.2d 177, 180 (5th Cir.1990); *Matthews v. City of West Point, Miss.*, 863 F.Supp.2d 572 (N.D.Miss. 2012).

Title VII prohibits discriminatory preference for *any* racial group, *minority* or *majority*. *Ulrich v. Exxon Co.*, 824 F.Supp. 677, 682 (S.D.Tex.1993). The Western District of Louisiana recently explained:

> There has been some discussion in the case law of whether reverse discrimination[1] cases require a heightened standard for establishing a prima facie case. Some circuits have held that in addition to meeting the traditional *McDonnell Douglas* elements, a plaintiff must also establish "background circumstances that support an inference that the employer is 'one of those unusual employers who discriminate against the majority.' " *Ulrich v. Exxon Co.*, 824 F.Supp. 677, 683 (S.D.Tex.1993); see also cases cited therein. The Fifth Circuit, however, and other courts, apply the *McDonnell Douglas* analysis without such an additional element. See *id.*; *Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir.1990).

*Metoyer v. American Eagle Airlines, Inc.*, 806 F.Supp.2d 911, 918 (W.D.La. 2011) (citing *McGarity v. Mary Kay Cosmetics*, No. 96-3413, 1998 WL 50460, at *3 n. 24 (N.D.Tex. 1998)). We agree with the Western District of Louisiana and Southern and Northern Districts of Texas that no additional burden should be imposed in a reverse discrimination suit.

Here, as detailed below, Quinn has alleged and submitted evidence showing that several white administrators were subject to adverse employment action from African-American superiors and that, after these actions, CATS was run predominately by African-Americans. (Quinn Depo., p. 170-171, R. Doc. 19-3, p. 67-68; Deposition of Albert Tonguis., p. 110-112, 143, R. Doc. 19-4, p.24-26, 36). Accordingly, given the "not onerous" burden, Mr. Quinn has satisfied the first element of his prima facie case.

The Defendants also claim that the fourth element of the *prima facie* test was not satisfied. Defendants claim that Quinn was not "replaced" because his position was eliminated and because Williams was never given Quinn's duties. (Owens Affidavit, p.3, R. Doc. 18-1, p. 95). Quinn, on the other hand, claims in his affidavit "[t]hat contrary to the assertions of the

---

[1] "Reverse discrimination" is defined as the "Preferential treatment of minorities … in a way that adversely affects members of a majority group." *Black's Law Dictionary* (9th ed. 2009).

defendant in its motion for summary judgment, following affiant's discharge, the defendant transferred his job responsibilities and authority to Ronald Williams, Todd Mance, and Cathy Paynes, all African-American, and none of whom had anywhere near the experience and training in transportation that affiant had." (Quinn Affidavit, p. 2, R.Doc. 19-9, p. 2).

The Fifth Circuit has directly addressed this issue. In *Howard*, the Fifth Circuit affirmed the lower court's determination that an employee claiming discrimination had established a prima facie case. His employer argued that the employee's position was eliminated, so the fourth prong of the prima facie test was not satisfied. But the Fifth Circuit and district court rejected this argument. The appellate court explained, "Because the record reflects that only [the employee's] specific position was eliminated and his duties were assumed by someone outside the protected class, [the employee] has made a prima facie showing of discrimination." *Howard*, 447 Fed. App. 626, 2011 WL 5138719, at *3.

Here, Quinn has at least raised an issue of fact that his position was eliminated and that he was replaced by persons outside his protected class. According, the fourth prong of the test has been satisfied, and Quinn has established a prima facie case.

### 3. A reasonable jury could conclude that CATS' reasons for termination were pretextual. Further, issues of material fact preclude summary judgment.

Because CATS has satisfied its burden of producing evidence of legitimate, nondiscriminatory reasons for Mr. Quinn's discharge (see, *supra*), the burden shifts back to Quinn to prove that CATS' reasons were merely a pretext for discrimination. *Haire v. Board of Sup'rs of Louisiana State University Agricultural and Mechanical College*, 719 F.3d 356, 364-365 (5th Cir. 2013). The plaintiff "must produce evidence, viewed in the light most favorable to [him], that would permit a jury to believe that [the employer's] proffered reason for firing [him]

7

was not its true reason but simply pretext for a racially discriminatory reason. Such rebuttal evidence, combined with the prima facie case, will suffice to create a genuine issue of material fact such that summary judgment is inappropriate." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-638 (5th Cir. 2011)(citations omitted).

Quinn has put forward rebuttal evidencing showing that the stated reasons for termination were pretextual. First, Quinn claims that Honore made derogatory racial remarks. Specifically, Quinn claims that Honore said Quinn "didn't fit into the culture of CATS." (Quinn Depo, p. 149. R. Doc. 19-3, p. 63). Quinn claims Honore made this comment three times. (Quinn Depo., p. 155, R. Doc. 19-3, p. 66).

Discriminatory remarks are only admissible in limited circumstances. The Fifth Circuit has explained:

> In evaluating federal discrimination claims, this court has distinguished between workplace comments presented as direct evidence of discrimination and those presented as additional (i.e., circumstantial) evidence in the course of a *McDonnell Douglas* analysis. Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment. *See Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir.1996)* (holding that "[r]emarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."); *see also Laxton v. Gap*, 333 F.3d 572, 583 n. 4 (5th Cir.2003) (noting that, in light of the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the *CSC Logic* test applies only when a remark is presented as direct evidence of discrimination). Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, we apply a more flexible two-part test. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir.2000). In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *See Laxton*, 333 F.3d at 583 (citing *Russell*, 235 F.3d at 226).

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

Although the "application of this distinction has been somewhat messy," *Reed*, 701 F.3d at 442 n 5, here, the evidence is arguably direct evidence of discrimination passing the *CSC Logic* test. The remarks were arguably race related, and Quinn claims one was made the day he was terminated. (Quinn Depo., p. 149, R.Doc. 19-3, p. 63). Construing the facts most favorably to Quinn, Quinn has testified that Honore was the "only person to have the authority to terminate" him. (Quinn Depo., p. 135, R. Doc. 19-3, p. 52). And it appears related to the employment decision at issue. Thus, there is direct evidence (or, at the very least, circumstantial evidence) of a pretextual decision which weighs against summary judgment.[2]

Quinn has submitted other evidence supporting a finding of pretext. Quinn submitted evidence that Williams, Mance, and Shaffer and Paynes were "undermining" Quinn. (Edwards Depo., p. 16-17, R. Doc. 19-8, p. 11-12); this is particularly important because CATS claims that Mance "made the decision and recommendation to terminate Mr. Quinn." (Mance Affidavit, p. 3, R. Doc. 18-1, p. 87). Quinn and others also claim there was a "racial culture" at CATS. (Affidavit of Jere T. Quinn, Jr., p. 2, R.Doc. 19-10, p. 2; Affidavit of Carol Cranshaw, p. 2, R. Doc. 19-11, p.2). Quinn submitted evidence that he did a "phenomenal job" during his employment at CATS, which would tend to mean that his discharge was unjustified. (See, e.g., Cranshaw Affidavit, p. 2, R. Doc. 19-11, p. 2; Deposition of Brian Marshall, p. 15-16, R. Doc.

---

[2] Based on the evidence currently in the record, the other derogatory racial remarks cited by Quinn do not satisfy even the lower *Russell* test. Specifically, Quinn has extensive evidence of racial remarks made by Ronald Williams (See, e.g., Deposition of Kelly Edwards, p. 12, R. Doc. 19-8, p. 7) and evidence he was a manager responsible in part for hiring (Deposition of Yvette Rhines, p. 8, R. Doc. 19-7, p.6)(Deposition of Ronald Williams, p. 8-9, R. Doc. 19-6, p. 5-6). But Ronald Williams testified that, while he had "manager" in his title, he "didn't have any people that reported to [him]," and there is no evidence he was responsible for Quinn's termination or had influence over those who did. (Williams Depo., p. 8-9, R. Doc. 19- 6, p. 5-6)(Affidavit of Seandra Buchanan, p. 1, R. Doc. 18-1, p. 100). Similarly, there is testimony that Eric Shaffer said that he did not want cooperation with Quinn, but these comments were made when Shaffer was an assistant director under Quinn. (Rhines Depo., p.18, R. Doc. 19-7, p. 10). Cathy Paynes, while an administrator, allegedly called Quinn "White ass," (Rhines Depo., p. 21, R.Doc. 19-7, p. 13), but there is no evidence in the record that she was "primarily responsible for the challenged employment action" or had influence or leverage over said decision maker.

19-5, p. 5-6). Finally, Quinn submitted testimony from himself and others that CATS fired a number of Caucasian administrators. (Quinn Depo., p. 170-17, R. Doc. 19-3, p. 67-68; Tonguis Depo., p. 110-112, 143, R. Doc 19-4, p. 24-26; Cranshaw Affidavit, p. 2, R. Doc. 19-11, p. 2).

Taken as a whole in the light most favorable to Quinn, a reasonable jury could conclude, based on this evidence and the prima facie showing *supra*, that the stated reason for termination was a pretext for discrimination. Accordingly, summary judgment should be denied.

Summary judgment should also be denied because of the many issues of material fact; specifically, CATS' version of events is substantially different than Quinn's.

First, contrary to Quinn's assertions that Honore was responsible for the termination, CATS claims that Honore did not participate in the day-to-day operations at CATS (e.g., Owens Affidavit, p. 2, R. Doc. 18-1, p. 94) and that Honore had no involvement in the termination of Quinn. (e.g., Mance Affidavit, p. 3, R. Doc. 18-1, p. 87). CATS claims that the discharge was recommended by Mance and approved by Buchanan and Owens. (Owens Affidavit, p. 2, R. Doc. 18-1, p.94; Mance Affidavit, p. 3, R. Doc. 18-1, p. 87).[3] Second, contrary to Quinn's charges that employees were undermining him, CATS submits evidence that it had a policy in place prohibiting discrimination. (Buchanan Affidavit, p.1, R. Doc. 18-1, p. 100). Third, although Quinn claims he did a "phenomenal" job, CATS counters by stating Quinn was reprimanded, regularly came in late and left early, became disruptive, made false statements to trainees, and was insubordinate, all in addition to the reasons stated in his termination letter. (Mance Affidavit, p. 2-3, R. Doc. 18-1, p. 86-87; Owens Affidavit, p. 2-3, R. Doc. 18-1, p.94-95).[4] Fourth, there is an issue of fact as to whether CATS purged itself of white employees; CATS submits evidence that it had several white administrators at the time of Quinn's

---

[3] This is directly relevant to whether the discriminatory remarks can be considered.
[4] To further complicate the factual issues involved in this case, Quinn claims he never even received the reprimand. (Quinn Depo., p. 115-116, R. Doc 19-3, p. 47-48).

termination. (Owens Affidavit, p. 3-4, R. Doc. 18-1, p. 95-96; Buchanan Affidavit, p. 2, R. Doc. 18-1, p. 101).[5]

In sum, there are simply too many issues of fact to grant summary judgment. This case should properly be resolved by a jury.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant, Capital Transportation Corp., d/b/a Capital Area Transit System is hereby **DENIED**.

**Signed in Baton Rouge, Louisiana, on <u>September 24, 2014</u>.**

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[5] Again highlighting the factual discrepancies in this case, Quinn counters that some of these were mere secretaries. (Cranshaw Affidavit, p. 2-3, R. Doc. 19-11, p. 2-3).